**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2007-20

UNITED SERVICES, INC.,

    Plaintiff-Respondent,

v.

CITY OF NEWARK,

    Defendant-Appellant.

_____

> Argued March 15, 2023 – Decided December 2, 2024
>
> Before Judges Accurso, Vernoia and Firko.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000221-18.
>
> Raymond M. Brown argued the cause for appellant (Pashman Stein Walder Hayden, PC, attorneys; Raymond M. Brown and Rachel E. Simon, of counsel and on the briefs).
>
> Gabriel H. Halpern argued the cause for respondent (Pinilis Halpern, LLP, attorneys; Gabriel H. Halpern, on the brief).

The opinion of the court was delivered by

ACCURSO, P.J.A.D.

Defendant City of Newark appeals from a $4,338,498.90 judgment in this long-running public bidding dispute between the City and plaintiff United Services, Inc., the City's former janitorial services provider. The General Equity judge entered the judgment "as a matter of equity" finding that "Newark understood at the time that it chose to bring the janitorial services in-house that it still had obligations" under the court's preliminary injunction. As there was no legal basis for entry of the court's interlocutory mandatory injunction requiring Newark to continue its relationship with United, and the Local Public Contracts Law, N.J.S.A. 40A:11-1 to 40A:11-60, does not provide for an award of damages against the City, and because the General Equity judge failed to follow the maxim that "equity follows the law," In re Est. of Shinn, 394 N.J. Super. 55, 67 (App. Div. 2007), we reverse.

This dispute has a long history, which we detail at some length in order to place the trial court's decision, and ours, in context. United Services won a two-year set-aside contract for minority- and women-owned businesses to provide janitorial services to the City in 2008. Following the expiration of that contract, the company continued to provide janitorial services to the City under a series of emergency contract extensions, the last of which expired in 2013.

In the spring of 2016, the City solicited bids for a new janitorial services contract. United claimed that when the bids were opened, it had the low bid, although the City never undertook a bid-conformity analysis of any of the bids. See Hillside v. Sternin, 25 N.J. 317, 324 (1957) (explaining "[t]he significance of the expression 'lowest bidder' is not restricted to the amount of the bid; it means also that the bid conforms with the specifications"). Dissatisfied with its own specifications, which it determined incentivized bidders to provide fewer workers working less hours, resulting in lower bids than the City had anticipated, the City rejected all the bids, and determined to substantially revise the specifications pursuant to N.J.S.A. 40A:11-13.2(d). United sued to enjoin Newark from rebidding the janitorial contract, and to compel the City to award the contract to United as the low bidder.

In August 2016, Newark's Municipal Council passed a resolution authorizing the use of competitive contracting under N.J.S.A. 40A:11-4.1 to procure custodial services, and the City issued a competitive contract request for proposals. United filed an order to show cause in the Law Division to enjoin Newark from either soliciting or accepting bids through the competitive contracting process. Judge Vena signed the order to show cause with temporary restraints in accordance with the customary practice in a public

bidding dispute.  See Palamar Constr., Inc. v. Pennsauken, 196 N.J. Super. 241, 244 (App. Div. 1983); Sellitto v. Borough of Spring Lake Heights, 284 N.J. Super. 277, 282 (App. Div. 1995); Waste Management of New Jersey, Inc. v. Morris County Mun. Utils. Auth., 433 N.J. Super. 445, 449 (App. Div. 2013); Ernest Bock & Sons-Dobco Pennsauken Joint Venture v. Twp. of Pennsauken, 477 N.J. Super. 254, 262 (App. Div. 2023).  See also cf. Barrick v. State, Dep't of Treasury, Div. of Prop. Mgmt. & Const., 218 N.J. 247, 263 (2014) (observing "an unsuccessful bidder, who does not promptly seek a stay of a lease bid award under Rule 2:9-8 when appealing an award determination, acts at his, her, or its peril".)

On the return date for the preliminary injunction, Judge Vena dissolved the temporary restraints and denied a preliminary injunction staying Newark from proceeding to rebid the contract.  He rejected United's claim that Newark would not suffer any harm by the entry of a preliminary injunction because United continued to provide janitorial and maintenance services to the City, albeit without a contract and at emergency rates.  Moreover, the judge found United had failed to demonstrate a likelihood of success on the merits given the City had a statutory right to reject all bids pursuant to N.J.S.A. 40A:11-

13.2(d), and the bid specifications were thereafter lawfully revised. See Crowe v. De Gioia, 90 N.J. 126, 132-35 (1982).

We granted United's motion for leave to appeal and reversed Judge Vena's denial of United's application for a preliminary injunction finding he should have applied a more "flexible" approach to his consideration of the Crowe factors. United Servs., Inc. v. City of Newark, No. A-2117-16 (App. Div. Apr. 17, 2017) (slip op. at 4) (United Servs. I).[1] "[P]erceiv[ing] no harm to any of the parties by reinstating the stay," the court concluded "the balancing of the equities involved militate[d] in favor of injunctive relief." Id. at 11. We remanded the case to Judge Vena, continuing our "order enjoining Newark from making any award of the contract . . . until resolution of the underlying complaint." Ibid. We did not address United's emergency contract extension and certainly did not enter a mandatory injunction requiring the City to continue its relationship with United. See Davidovich v. Israel Ice Skating Fed'n, 446 N.J. Super. 127, 160 (App. Div. 2016) (emphasizing "[a] mandatory

---

[1] Although the Rules do not ordinarily allow us to cite an unpublished opinion, we do so here pursuant to the exception in Rule 1:36-3 that permits citation "to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law." See Badiali v. N.J. Mfrs. Ins. Grp., 429 N.J. Super. 121, 126 n.4 (App. Div. 2012), aff'd, 220 N.J. 544 (2015). As already noted, the history of this long-running dispute provides the necessary context for our decision here.

injunction is 'an extraordinary remedy that is only granted sparingly by the courts'" (quoting Trinity Indus. v. Chicago Bridge & Iron, Co., 735 F.3d 131, 139 (3d Cir. 2013))). The Supreme Court denied the City's motion for leave to appeal but asked the trial court "to expedite the disposition of plaintiff's complaint." United Servs., Inc. v. City of Newark, 233 N.J. 117 (2017).

Unfortunately, discovery on remand "proceeded at a snail's pace." United Servs., Inc. v. City of Newark, No. A-2769-17 (App. Div. Oct. 9, 2019) (slip op. at 1) (United Servs. II). Judge Vena eventually granted summary judgment to Newark finding it had a statutory right to reject all bids to substantially revise its specifications, N.J.S.A. 40A:11-13.2(d), and to employ competitive contracting in lieu of public bidding, N.J.S.A. 40A:11-4.1 and N.J.S.A. 40A:11-4.3(a). The judge dismissed the complaint in February 2018, noting in his comprehensive written opinion that United had "been awarded 14 months of no-bid, emergency contracts as a result of the ongoing litigation and the enjoinment of [Newark's] ability to procure janitorial services" through competitive contracting.

United appealed, arguing Judge Vena erred in granting summary judgment to the City because there were genuine disputes of fact over the City's reasons for rejecting all the bids. Id. at 2. In October 2019, we agreed

with Newark that the appeal was moot because the 2016 bid solicitation was only "for a two-year contract, meaning that had the court voided the rejection of all bids and awarded the contract to plaintiff as the lowest responsible bidder, the agreement would have terminated more than one year ago." Id. at 7.

We noted that had United "won the contract award in 2016, [it] would have had to perform the contract for approximately $1.8 million per year, i.e., the amount of its bid." Id. at 8. Instead, as a result of our stay prohibiting Newark from bidding out a new contract, United had "been performing under successive no-bid emergency contracts of approximately $4.25 million per year." Ibid.

We rejected United's claim that the case was not moot because it was entitled to its counsel fees, and damages, the latter presumably for having performed the work at 2008 emergency pricing levels.[2] Ibid. Leaving aside there is no provision for the award of counsel fees under the Local Public Contracts Law, and the law is well-settled "that 'an aggrieved bidder is not entitled to damages,'" we found United "hard-pressed to argue that it suffered

---

[2] It appears from our record that United was actually performing the work at a rate thirty-two percent higher than its 2008 rates.

financial damages by performing the contract under emergency extensions that provided payments more than twice the amount of [its] 2016 bid." Id. at 8-9 (quoting Suburban Disposal, Inc. v. Twp. of Fairfield, 383 N.J. Super. 484, 495 (App. Div. 2006)).

In the meantime, Newark had again tried to re-bid the contract for janitorial services. It issued a request for proposals under the competitive contracting statutes in the spring of 2018, breaking the 2016 janitorial services contract into eight smaller contracts, each of which covered a limited group of specific municipal properties and required the bidders to commit to minimum staffing levels and hours. In December, the City Council proposed a resolution authorizing the City's qualified purchasing agent to enter into the eight contracts with the bidders selected, one of which was United, providing for a two-year contract term in a total amount for all eight contracts not to exceed $4,695,113.22, with an option to renew for an additional year.

United filed a complaint and proposed order to show cause with temporary restraints in the Chancery Division before a different judge to block Newark from awarding the bids and entering into contracts with the successful bidders. In its amended complaint, United alleged fraud, collusion, that the awards were ultra vires, that Newark failed to follow the model evaluation

criteria set forth in N.J.A.C. 5:34-4.2, failed to evaluate the proposals in a fair and reasonable manner, and that the failure to award all the contracts to United was part of a pattern engaged in by the mayor and the City of "remov[ing] most or all Hispanic employees from significant leadership positions after coming into power" in 2014, violating the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49, the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2, and the Federal Civil Rights Act, 42 U.S.C. § 1983, and demanded a jury trial.[3] The Chancery judge signed the order to show cause but denied temporary restraints.

We granted United's emergent application for a temporary stay and summarily reversed the trial court's order denying temporary restraints. We, thus, stayed the City from entering into contracts with the winning bidders before the trial court could hear United's application for a preliminary

---

[3] Even leaving aside the request for a jury trial, United's bid challenge was obviously misfiled in the Chancery Division, General Equity Part because the primary relief sought, albeit a permanent injunction, was legal under the Local Public Contracts Law. Bid challenges are properly brought in the Law Division pursuant to Rule 4:69 as actions in lieu of prerogative writs to challenge municipal action — as United plainly understood in 2016 when it filed its prerogative writs action challenging the 2016 bid process. See Palamar Const., Inc. v. Pennsauken Twp., 196 N.J. Super. 241, 244 (App. Div. 1983).

injunction continuing that relief pending resolution of its bid challenge. Our order provided as follows:

> Contrary to the extensive briefing by the parties, the only issue before this court is the trial court's refusal to temporarily stay the contract award pending decision on plaintiff's application for a preliminary injunction where the court will assess the likelihood of plaintiff's success on the merits of its bid challenge in accordance with the competitive contracting in lieu of public bidding sections of the Local Public Contracts Law, N.J.S.A. 40A:11-4.1 to -4.5. See Weidner v. Tully Environmental, Inc., 372 N.J. Super. 315 (App. Div. 2004).
>
> As a bidder's right to such temporary relief pending a court's review of the merits of the challenge on an application for a preliminary injunction is well settled, see M.A. Stephen Const. Co. v. Rumson, 125 N.J. Super. 67, 74 (App. Div. 1973), we reverse the denial of temporary restraints.
>
> We express no view on the merits of any continued stay, which will rest on the trial court's view of plaintiff's likelihood of success on the merits of its bid challenge. See Meadowbrook Carting Co., Inc. v. Borough of Island Heights, 138 N.J. 307, 315 (1994). We do not retain jurisdiction.

On the return date of the order to show cause as to why a preliminary injunction should not enter, United's counsel argued "[i]f the court does not grant the preliminary injunction it renders the local public contracts law meaningless and it says, Newark you can do whatever you want. Whether it's

arbitrary, capricious, it doesn't matter." He argued, contrary to controlling precedent, that a deviation "doesn't necessarily have to be material" if the City failed to follow its own process in evaluating the bids making the selections arbitrary, that the award smacked of "favoritism, extravagance, improvidence and corruption," that United was prejudiced by not having discovery, and that the City improperly interviewed bidders after the bids were submitted.

And although acknowledging the bidder awarded two of the eight contracts had a conforming bid, counsel rhetorically asked "how come they only get two contracts? Why? Because [the City] picked whoever they wanted to pick and that's making a mockery of the regulations, the evaluation criteria and this process." Counsel conceded that "even under [his] calculations," he couldn't argue United was "entitled to all of the bids," but thought "that they might be entitled to another two or three subsections of the bids" based on his contention that the process was flawed.

Anticipating the City's argument that United's application was simply a pitch to continue "operating under a bloated emergency extension," United's counsel contended the court could "fashion an equitable remedy," in that the company was prepared, if the court granted the preliminary injunction, "to go forward" while the injunction remained pending "[u]nder the terms and

conditions of the [request for proposals]" at a savings of $619,000.00 to the City of Newark. "So, their complaint about how much it's going to cost if [United] stays there or that we want to stay there or the bloated contract is resolved." Counsel offered no argument as to why staying Newark from entering new contracts pursuant to the 2018 bid awards would have any effect on whether the City continued to use United to provide janitorial services in the City's buildings.

Assistant Corporation Counsel for the City countered that United clearly failed to understand the competitive contracting process freed the City from having to simply accept the lowest bid, allowing it the discretion to consider among the conforming bids which was most advantageous to the City, price and other factors considered. He contended the City's post-bid opening interviews with the evaluation committee was an important part of the process and expressly included in the request for proposals (a point United's counsel was forced to concede). Counsel argued United had employed a scattershot approach that failed to identify specific deviations in the bids that would be considered material under the case law. He also maintained that United's contention that the awards were based on "political favors" was simply a rehash of the same scurrilous and unsupported allegations United made in the

2016 bid challenge, adding: "[w]e all know what the ultimate outcome of that case was. There was no proof then. There's no proof now." Counsel contended United doesn't "care if they win this case. They don't care. All they want is for you to stop the contract from going forward."

After hearing argument, the General Equity judge entered the preliminary injunction on the record. The judge began by noting the status of the case:

> I entered an order to show cause. I denied temporary restraints. I was reversed on that application. The Appellate Division entered temporary restraints and then sent it back to us for determination on the preliminary injunction hearing and whether or not there would be a likelihood of success on the merits.

Although we had dismissed the 2016 challenge as moot only four months before, noting how much more money United had received from the City by its unsuccessful bid challenge than had it been awarded the contract, United Servs. II, slip op. at 3, the judge declined to take "the history of the case" into account.[4] "As the judge [understood] it, [she was] just being asked

---

[4] It is not clear from the transcript whether the court and counsel for United were aware of our disposition of United's appeal of Judge Vena's decision on United's 2016 challenge. In its brief to the trial court, United represented that the prior appeal was "presently pending" in this court, and that it was "presently providing janitorial services to the City of Newark pursuant to an

to decide whether or not the process that was utilized" to solicit and evaluate the "contract bids that was conducted in the late fall of 2018, whether or not that process was appropriate." Reviewing "the specific relief that was requested on behalf of the current contract holder, or the — the contract has terminated many years ago, but by [United] which has been providing the janitorial services by way of an emergency contract for many years," the judge noted that in addition to a "preliminary and permanent injunction enjoining Newark from awarding" the contracts, United also sought "an order maintaining the status quo and continuing [United] in place as the janitorial services provider."

The judge announced she was "going to enter a preliminary injunction in this matter because [she] believe[d] there remain[ed] questions about the process that was followed for the request for proposal and the evaluation of the [bids] in the case." That led to the following colloquy with counsel:

> Ass't Corp. Counsel: I just want to make sure I
> understand the — very clearly what the scope of the
> injunction is. My understanding is, right now we were
> not — we're not going to be able to award this
> contract.

emergency contract extension, and thereafter a preliminary injunction imposed by the Appellate Division," neither of which was accurate. The second of the statements was simply untrue.

The court: Today.

Ass't Corp. Counsel: Today or any time forward until there's a resolution. But, I'm concerned about something that requires Newark to maintain the status quo of its present condition, present contract. There is no contract with United Services.

The court: Well, what's it doing right now?

Ass't Corp. Counsel: We're paying United Services under — because we've been in litigation. But, there's no injunction. There's no — there's nothing. We've just been paying them hoping to get this resolved by way of this competitive contract. But, . . . we can't award under this competitive contract, but there is "no hold the status quo" that's going to order the city to keep things going the way they are today. I mean that's not part of this application. I mean if the city entered into an emergency contract [with someone else] tomorrow, [the] city enters into an emergency contract tomorrow. You know, they wanted an injunction from the Appellate Division six months ago before this case was filed to maintain the status quo on their contract and the Appellate Division said no and that was because of the 2016 contract.[5] This application is to stay the award.

The court: That's what I'm doing.

---

[5] On June 19, 2018, we denied United's application to file an emergent motion to prevent Newark from accepting bids on the 2018 procurement, finding no risk of any harm, much less irreparable harm, to United's "claim to a right to a contract as the alleged lowest responsible bidder during the prior bidding process." On June 29, 2018, we denied United's application to enjoin the award of the 2018 contracts pending resolution of its appeal from Judge Vena's final decision denying its 2016 bid challenge.

United counsel:  And maintain the status quo.  Which is where we are today.  He wants to change it.

Ass't Corp. Counsel:  I may not [be] able to award this contract to anybody because there are flaws in the contract, but that has nothing to do with the present circumstances that are in the City of Newark.  And if the mayor . . .

The court:  What are you proposing [counsel]?

Ass't Corp. Counsel:  I don't . . . propose this.  I'm the litigation attorney.  But if the mayor wants to change the status quo of the contract today or tomorrow . . . we have no contract anymore with United Services. And this is the proposal.  [A]nd there is nothing in this application to say we've got to keep it going to United Services under a four million dollar deal.  That's not what this case is about. This is about the award of a flawed RFP.  Period.

The court:  Okay.  Thank you. . . .

United counsel:   This — he wants to change the status quo.  The purpose of the preliminary injunction is to maintain the status quo.  I made an offer earlier to them, which — which they don't want to take up, which they could save a lot of money and they don't want to do that.  So, the status quo is whatever's been going on for the last five years.

The court:  But, it's not going to last because we're

United counsel:  I understand that.

The court:  going to have a hearing very, very quickly on this and it all may change.

16

United counsel:  That okay.  [T]hat's fine with us, your honor.  I mean this doesn't . . . .

The court:  I want you to think both of you about a resolution that's within —

Ass't Corp. Counsel:  There are other bidders that are awardees.  I can't settle the case.  They'll be suing the City of Newark.  Your honor, I have no —

The court:   Unless I find [counsel] that the process was flawed and then you have to re-do the process.

Ass't Corp. Counsel:  Agreed.

The court:  So, I'm asking you to please think creatively here because we're dealing with public contracts and I realize we're constrained.  But, you as attorneys have methods of resolving cases, so that you don't have to put this all back out to bid or you don't have to open yourself up to lawsuits from these other contractors. There are ways of doing it and I trust that [United's counsel] is also going to be reasonable in his approach.

United counsel:  I have made numerous suggestions but they all have been rejected.  Of ways I thought . . . .

Ass't Corp. Counsel:  I understand your honor's ruling.  I don't have any — I'm not asking for any kind of reconsideration.  I just want to make sure that what is being enjoined is what's being enjoined.  And that is our awarding of this contract has been enjoined because of the flaws.

The court:  And while you —while it's been enjoined by the Appellate Division you've been continuing the emergency contract of [United].  Is that right?  Yes.

Ass't Corp. Counsel:  Not because we've been enjoined to do so.

The court:  Okay.  You're being enjoined to do so.

Ass't Corp. Counsel:  I hear you now.

That hearing took place on February 8, 2019.  The City did not seek leave to appeal the preliminary injunction entered on March 20, 2019, ordering "that pending the final disposition of this matter, or further order of this court, the parties shall maintain the status quo regarding the retention of [United] as the janitorial and maintenance service contractor for Newark under the present terms of service and payment."

In November 2019, the City determined to abandon the 2018 procurement and prepare to take its janitorial services in-house, which counsel for the City claims was motivated, in part, by United's unceasing efforts to prevent it from bidding out new janitorial services contracts.[6]  In December

---

[6]  It is unclear to us why this bid challenge was still pending eighteen months after it was filed.  See Barrick, 218 N.J. at 264 ("Contractual matters in which the State and its public entities engage must proceed with alacrity.  The bidding administrative process is premised on prompt identification, review, and correction of any contracting process errors").  Although United claims the

2019 the City removed the matter to the District Court after the filing of the amended complaint, which added the federal civil rights allegations. Following the entry of outside counsel for the City, it moved to dismiss the complaint in federal court in light of its decision to move its janitorial services in house, or to remand the case to State court.

While that application was pending, the City filed an order to show cause in the District Court in late February 2020, at the start of the pandemic, seeking to be allowed to clean City buildings "with in-house janitorial staff to abate the existing health and safety risks found there" and dissolving the preliminary restraints entered by the General Equity judge "requiring the City to use [United's] services to clean" those buildings. United filed a cross-motion to hold the City in contempt for violating the March 20, 2019 preliminary injunction, seeking sanctions and counsel fees.

City stonewalled discovery, it included in its appendix, presumably as proof, a request for admissions it asserts went unanswered by the City with 54 requests — each asking the City to admit a specifically named person with an Hispanic surname in the City's employ resigned, was transferred or was replaced by a Black person. Those allegations were based on a 2019 complaint filed in the Law Division by Newark's former superintendent of public works following his termination, alleging the current administration "was engaged in an illegal and concerted effort to remove Hispanic employees from their positions and replace them with African Americans." We fail to see what those allegations have to do with whether there were material deviations in the bids of those contractors who were awarded contracts in the 2018 procurement.

19

At argument on those applications on March 16, counsel for United argued the City was engaged in "a shameless attempt . . . to use the Coronavirus, a national emergency, to oust [his] client out of its contract, which it couldn't do in state court when it tried.  We have a preliminary injunction."  Attempting to ascertain the facts, the judge asked United's counsel:

> The court:  Under your current contract you have a contract to clean, sanitize, eight buildings.  Is that correct now?
>
> United counsel:  No.  Forty — all of the [municipally owned] buildings in the City of Newark.
>
> The court:  All of the buildings?
>
> United counsel:  All of the buildings.  Yes, . . . the preliminary injunction covers all of the buildings, your honor.
>
> City counsel:  [United's counsel's] correction is important.  They do not have a contract.  They are performing pursuant to injunction. . . .  It is an important correction.  They are not functioning pursuant to a contract.  They are functioning pursuant to injunctive relief, which is why we came here.

Counsel for Newark addressed the court's concerns about the absence of federal jurisdiction, explaining that while the City's motion to dismiss or remand to State court remained pending, the only court from which the City

20

could seek relief was the District Court, stating he "want[ed] to not be in a position where [his] client [was] in contempt of an injunction."

Counsel, emphasizing that public health officials had declared there were already persons sick with the virus in the City and that it would spread exponentially throughout the community, sought "from this point forward without prejudice to [United] to do our own cleaning." Counsel explained the City was proposing to use its "crews which consist of companies under emergent contracts specifically with trained personal to deal with [the] Coronavirus and our personnel, meaning city personnel who have also been trained, be allowed to clean the buildings of Newark for the duration of this emergency without prejudice to any of the other issues that are before you."

Counsel repeated that the City was not there "to argue about money," as "[t]hat will abide the court's final decision." Counsel stated several times that whether United "get[s] paid during this interim or not is something you or another judge will decide. We don't seek [to] prejudice [United] . . . now in their standing." "All we are saying is, without prejudice to them, without raising the issue of money, give us the right to clean our buildings for which we were elected to be responsible."

A-2007-20

Although continuing to express doubts over its jurisdiction to decide the matter, the court acknowledged the City's responsibility in light of the public health crisis "to make sure things are being done thoroughly and properly." Accelerating the return date on the pending motion to dismiss or remand, the court remanded the case to state court without ruling on the parties' emergent applications. The City locked United out of its buildings and took over janitorial services on March 16, the same day as the hearing.

In May 2020, Newark filed a motion to dismiss United's complaint as moot, and United cross-moved to hold the City in contempt, impose sanctions of $15,000 per day, based on its monthly billings to the City of $450,000, from the date of the lockout until United "is restored to its position in accordance with the" preliminary injunction and that it continue to be paid at that rate until the end of the injunction, and recover its counsel fees. The General Equity judge heard argument on the motions on July 31. Counsel for the City contended the case was moot because the 2018 contracts that formed the basis of United's complaint no longer existed as "[t]he City has moved away from that very structure to in-house provision of these services." Counsel also pointed out that from the entry of the preliminary injunction through February 2021, the City had paid United $8,434,370.75, notwithstanding the City

22

Council had only appropriated $4,695,113.22 for all eight contracts over the two-year contact period.

Counsel acknowledged the City's disagreement with the court's entry of the preliminary injunction but emphasized the City had abided by it. Counsel explained the City had moved the cleaning in-house at the start of the pandemic, without prejudice to United's rights under the preliminary injunction, emphasizing "[t]he payment issue abides" the court's ruling. That led to the following colloquy between the court and the City's counsel:

> The court: What about the issue of the fact that that was done pending litigation?
>
> City counsel: Well it was done without prejudice. [United] will be paid until you say stop. So, [United] is not prejudiced. We are doing what we think is best for the City of Newark in terms of capacity and long-range efficiency, and effective cleaning of the buildings in light of what has happened. So, Newark is doing that. It has the right to do it. It is aware of Your Honor's order so it knows it is obligated to pay [United] until you say stop. And we've come in today to say stop.
>
> The court: Stop on December 31st, 2020, for example, then what you're saying is you did this with the understanding that the City of Newark is going to be responsible until perhaps the injunction would — would end or the — the presumed contracts would end.

23

City counsel: We are responsible to pay until you say stop. We are — our prayer is that you stop today. We recognize why you might take the date as significant. We disagree with that, but we respect it. The reason we disagree is we think having eliminated the very contract which is the very foundation of their local public contract case, and having paid them twice what they could have made had they won the entire award, enough is enough. If you say it stops December 25 2020, we'll abide by your order subject to whatever happens in the Appellate process.

The judge then asked counsel for United its position "on the fact that Newark concedes that it is to pay [United] what it's fairly due under the injunction."

So for example, if I felt that fairly under the circumstances the contracts would've gone through December of 2020, although [United] was only meant to get one contract, but if your client prevailed in this action and is able to prove to me that the other contractors, the other six contractors would not have gotten the contracts because the process was flawed, we then have to presumably establish that the new process would have gone 100% to [United]. You would have quite a burden. But let's say that you met that burden, how would this go beyond December 31st of 2020?

United's counsel replied that the 2018 contracts likely would not have been signed for months, but "giv[ing] Newark the benefit of the doubt that they signed the contract as soon as they did the award at the meeting in January," he argued the two-year contract would run through January 2021. Counsel added,

24

however, that the parties were in a "strange situation because the City says well, we'll pay you. I guess they're paying us as a result of the violation of the injunction. Because generally under the Local Public Contracts Law you . . . we're not supposed to get damages. But I guess Newark is conceding we can get damages."

Although allowing United's counsel to argue on contempt and attorneys' fees, the judge expressed her concern

> that this case has gone on beyond a reasonable time for the issue at hand. And that really it's time for the matter to be resolved in fairness to everybody. And it seems to me that there is a very obvious way for that to happen . . . . But the fact that Newark is on the record now both before [the federal judge] and before myself representing that it fully intends to pay the amounts that are fairly due your client under the injunctive relief. I don't know where your client is going beyond that [counsel].

Counsel for United finally conceded his client would never be entitled to anything beyond the injunction continuing until what would have been the end of the contract, December 31, 2020, although arguing "the Court might be entitled to impose sanctions and have penalties paid into the court" for Newark's violation of the injunction. Counsel for the City reiterated its commitment to abide by whatever the court ordered and its position that

25

United had already received twice what it would have been entitled to had it won the 2018 contracts and "shouldn't be paid another dime."

In making her ruling, the General Equity judge began by recapping her understanding of the 2016 litigation, saying: "[t]he Appellate Division had entered an injunction in that matter, during which time [United] continued for two years to provide janitorial services under what had started as an emergency contract in 2010, as I understand it." Continuing with the history of this matter, the judge noted the entry of the preliminary injunction in February 2019, and that United "continued to provide the janitorial services pursuant to that preliminary injunction," and for which it had been paid, but for a few late invoices, until Newark locked United out on March 16, 2020.

The judge found

> The City of Newark has represented now twice before a federal district court judge and before me that when it made the decision to take the janitorial services in-house and not to proceed with the request for proposals, the awards of contract in this matter, that it had intended to continue to pay [United] pursuant to my injunction until this court determined that . . . payments were no longer due.

Based on the City's representations "that it intends to pay [United] for the services, and it's understanding that it could be responsible for those payments through in its position December 31st of 2020, I don't see how any

further claims should survive."  The court ruled it did not find Newark in contempt of the preliminary injunction and would dismiss the case as moot, but continued, saying

> I am going to require that Newark pay [United] through December 31st of 2020, that is the extent of the contract in my opinion that would have been in place had the award been given solely to [United]. And I'm doing that as a matter of equity.  I find that Newark understood at the time that it chose to bring the janitorial services in-house that it still had obligations under this injunction.

The judge found Newark had the right, as a matter of public policy, to break up the janitorial services contract in an "attempt to give a variety of parties the opportunity to contract with the City and to include diverse parties" in its contract awards.  She found that to be the City's intention in issuing the 2018 request for proposals in "the way it did and weighing the various factors in it."  The judge declined, however, "to make a decision on the issue of the process that was utilized here based upon the representations made, both by the City of Newark and by counsel for [United].  I don't see that there's anything more that [United] would be entitled to under these circumstances."

When counsel for United asked when it could expect payment, counsel for the City responded that Newark was in the midst of a "fiscal emergency" as the COVID-19 crisis had rendered the City severely "cash-strapped."  The

judge acknowledged that "Newark is in a bind right now," and asked that the parties attempt to work out payment terms between themselves, "understanding [counsel] that your client is getting paid for services that it is not providing. So, essentially it's actually — I shouldn't say this, so in some ways it's being unjustly enriched because it's not providing the services and it's getting paid for them." A confirming order followed that provided in part that "[t]he preliminary injunction entered on March 20, 2019 is hereby DISSOLVED, upon the condition that Defendant continues to pay Plaintiff under the terms of the injunction through December 31, 2020, as if the injunction remained in full force and effect."

The City moved for reconsideration. Newark argued that payment to United of any monies beyond the $4,695,113.22 appropriated for all eight contracts violated the Local Public Contract Law's prohibition on damages, the law on unjust enrichment and was beyond the power of the court to order pursuant to a preliminary injunction. The judge responded by saying:

> The preliminary injunction found that the contracts were not to be awarded. So, relying on those contract amounts is problematic for your client, because I found that the process might have been improper. And that was the reason for my maintaining the status quo. I don't understand the argument that the status quo was the amount of the contracts.

28

United agreed with the judge that counsel for the City had represented to the court that United "continue[d] to be entitled to get paid but they don't have to participate in the process of cleaning." Counsel contended "this case is not about unjust enrichment. It is about enforcement of your honor's order which they admittedly violated. And the only issue is whether the court is going to enforce its order or you're going to allow Newark to do whatever it wants." United also disputed the City's assertion that the City had paid United more than it would have received had it won all eight contracts. Relying on a certification from a United employee with knowledge of the City's account, counsel represented that United had "only been paid several hundred thousand dollars on [these] contract[s]. There are other contracts that [United] is being paid under that weren't the subject of this bid."

Counsel for the City countered that, as United had represented in federal court, "all the buildings [United] cleans in Newark are pursuant to this injunction," it was disingenuous for United to argue that it had not received many times more from the City than it would have had it won all eight contracts. Counsel for the City added that "the City will comply with those court orders that are issued by this court subject to its right to appeal. That's always been our position."

29

The General Equity judge recounted that "[t]he preliminary injunction in this matter was entered as a result of my finding that there were questions of fact regarding the contract process and regarding the purported granting of six or seven contracts, or eight contracts to various vendors, one of which was [United]."  The judge repeated the terms of the preliminary injunction memorialized in the order of March 20, 2019, "that pending the final disposition of this matter or further order of this court, the parties shall maintain the status quo regarding the retention of [United] as the janitorial and maintenance services contractor for Newark under the present terms of service and payment."  Finding no basis for reconsideration, the judge concluded:

> because the City of Newark chose to take [United] off of the services, but agreed to continue to pay them, I entered an order that [United] should be paid through December 2020, which would have been the extent of any contracts that might have been awarded, notwithstanding my preliminary injunction otherwise.

The judge agreed with the City, however, that the amount United claimed was owed remained in dispute, directing if the parties were unable to come to agreement on that figure, United could make a motion for entry of judgment.

The court heard argument on United's motion for judgment on February 11, 2021, nearly a year after United had ceased providing services to the City. Counsel for United advised the court it was seeking judgment in the sum of

$4,432,612.90, not as "contract damages.  What you have in front of you is ordering Newark to pay as a result of A, their agreement and B, as a result of the order, the preliminary injunction, entered" by the court.  Counsel repeated that "this is not a calculation of damages in a typical breach of contract case.  This is simply an award of money which they agreed to [pay], which Newark was supposed to pay in accordance with the preliminary injunction."

Newark countered that United had already received $9,000,000 pursuant to the court's preliminary injunction and was seeking another nearly $4,500,000 for ten months of services it did not provide, which would result in its receiving nearly $13,500,000 pursuant to a preliminary injunction entered in a bid challenge to contracts worth exactly $4,695,113.22.  A dispute over one municipal building on Williams Street led to the following colloquy between the court and counsel.

> The court:  Okay, [counsel] I would like to hear about the Williams Street Building that apparently Newark believes is not part of this contract and you [maintain] that it is?
>
> United counsel:  Yeah.  Well, your honor, it was not part of this contract.  It was part of the work that [United] was always doing.  It was subject to the preliminary injunction and in fact —
>
> The court:  Part of the R.F.P. was it?

United counsel: It was not part of the R.F.P. That building was not going to be part of the R.F.P. It was one of the buildings [United] was working in and the injunction enjoined them from — required Newark to keep us working in all of the buildings. I do recall and I have to be careful because I'm making a recollection from a long time ago, your honor, that [Assistant Corporation Counsel] was counsel at that time. We had a conversation, it may have been when the order was being entered, [Assistant Corporation Counsel] raised a question in the courtroom, after the argument on the preliminary injunction, about these other contracts and I objected to it and I recall — well and then I do recall that we had a back and forth on the form of order. And that, the final order entered by your honor included all of the buildings, which would have included Williams Street. [Assistant Corporation Counsel] was trying to exclude what he referred to, I think, as germicidal, which is Williams Street.

The court: But that was within the preliminary injunction that I entered?

United counsel: Yeah.

The court: Williams Street was in it?

United counsel: Yes, Your Honor.

The court: How do we know that?

United counsel: Only because of the back and — forth — I recall this coming up sometime, somewhere and I remember looking at my e-mails and my correspondence back and forth with [Assistant Corporation Counsel] and I would be more than happy to track that down and provide it to your honor.

32

A-2007-20

The court:  How much are we talking about for that portion?

United counsel:  $94,000.

The court:  Okay.  I also don't want to misstate what I believe occurred with the original preliminary injunction but my — what I thought (indiscernible) was that the preliminary injunction would apply to those contracts that [United] had at the time that — that were the subject of the R.F.P.  I don't know if that was in the record or not, it's — and so I don't want to misstate it.  I'm a little concerned about the Williams Street —

City counsel:  Yes, judge and I'm not sure if a preliminary injunction could be ordered as to a property that's not the subject of a litigation and —

The court:  Of course.

City counsel:  I do have correspondence between [United's counsel] and [Assistant Corporation Counsel], where [United's counsel] confirms germicidal is not part of this litigation.

The court:  And that's the $94,000?  Okay.

United counsel:  Yeah —

Finding United had "established what it would have been paid under these contracts, pursuant to the preliminary injunction," with the exception of Williams Street, the court entered judgment for United for $4,338,498.90 for the monies owed "as a matter of equity" under the preliminary injunction.

Newark appeals, arguing the judgment must be reversed because United is not entitled to damages under the Local Public Contracts Law, the judgment unjustly enriches United at the expense of the City's taxpayers, unlawfully punishes the City for its lawful conduct in deciding to take its janitorial services in-house, and that requiring the City to pay United through the end of a contract period that never began at emergency rates far in excess of its bid rate "as a matter of equity" for violation of the court's preliminary injunction is unlawful. We agree on all points.

We need not consider whether the General Equity judge was correct to enter the preliminary injunction staying Newark's ability to enter into the eight contracts it had determined to award pursuant to its 2018 competitive contracting procurement based on her "concerns with the process." The record does not permit resolution of the issue and it is long since moot in any event. We note only that United was required to demonstrate clearly and convincingly that it possessed "a reasonable probability of success on the merits; that a balancing of the equities and hardships favor[ed] injunctive relief; that [it had] no adequate remedy at law and that the irreparable injury to be suffered in the absence of injunctive relief [was] substantial and imminent; and that the public interest [would] not be harmed." Waste Mgmt. of New

Jersey, Inc. v. Union Cnty. Utils. Auth., 399 N.J. Super. 508, 519-20 (App. Div. 2008) (citing Crowe v. De Gioia, 90 N.J. 126, 132-34 (1982)).

And although we've "held that a court may take a less rigid view in its consideration of these factors when the interlocutory injunction sought is designed to merely preserve the status quo," McKenzie v. Corzine, 396 N.J. Super. 405, 414 (App. Div. 2007), "in some cases, such as when the public interest is greatly affected, a court may withhold relief despite a substantial showing of irreparable injury to the applicant." Waste Mgmt., 399 N.J. Super. at 520. The judge was also, of course, required to give deference to the City's determination of the qualification of the bidders "because judges are not entitled to overturn the authorized decisions of municipal bodies unless those decisions are arbitrary, capricious or unreasonable." Id. at 525. As we've reminded before, it's not enough to conclude the public entity "acted imperfectly or, with the aid of hindsight, that it could have been more thorough," id. at 526, it's whether the entity's decision that a bid conformed to the specifications "was arbitrary, unreasonable or capricious." In re Protest of Award of On-Line Games Prod. & Operation Servs. Cont., Bid No. 95-X-20175, 279 N.J. Super. 566, 590 (App. Div. 1995).

Even had the court appropriately entered the preliminary injunction to stay the City from moving forward on its 2018 procurement, there was simply no legal basis to order Newark to continue to have United clean its buildings while it challenged the bids. Certainly, United never offered one. Counsel's entire "argument" on the point consisted of his statement that the City

> wants to change the status quo. The purpose of the preliminary injunction is to maintain the status quo. I made an offer earlier to them, which — which they don't want to take up, which they could save a lot of money and they don't want to do that. So, the status quo is whatever's been going on for the last five years.

But as Assistant Corporation Counsel explained to the court, United's 2018 bid challenge had nothing whatsoever to do with how the City was then opting to clean its buildings. A preliminary injunction in a public bidding dispute is to preserve the subject matter of the suit, that is, the opportunity to obtain the contract, Waste Management, 433 N.J. Super. at 454, not to allow a disgruntled bidder to continue its grip on a no-bid extension at emergency rates. See Twp. of River Vale v. R. J. Longo Constr. Co., 127 N.J. Super. 207, 215 (Law. Div. 1974) (noting "[t]he purpose of competitive bidding for local public contracts is, as has been frequently reiterated, not the protection of the individual interests of the bidders").

United didn't have a contract with Newark. Its last emergency contract extension had expired five years before. Assistant Corporation Counsel explained the City was under no legal obligation to continue to retain United to provide the City janitorial services, and the mayor and council had always been free to enter into an emergency contract for those services with another provider; it wasn't yoked to United. See N.J.S.A. 40A:11-6; Poling v. Roman, 86 N.J. Super. 484, 490 (Law. Div. 1965).

Assistant Corporation Counsel acknowledged the City had kept United on during the 2016 litigation, but emphasized the City had done so voluntarily; "there's no injunction. There's no — there's nothing." When Assistant Corporation Counsel asked again for clarification of the scope of the injunction at the end of the hearing, he again acknowledged in response to the court's question that the City had continued to pay United to perform janitorial services while Judge Vena's dismissal of United's challenge to the 2016 procurement was on appeal — correcting the General Equity judge's statement that the City had "been enjoined by the Appellate Division" by stating "[n]ot because we've been enjoined to do so" — the judge replied "Okay. You're being enjoined to do so." And with that, Newark was preliminarily enjoined "pending the final disposition of this matter, or further order of [the] court, . . .

37

[to] maintain the status quo regarding the retention of [United] as the janitorial and maintenance service contractor for Newark under the present terms of service and payment." The General Equity judge provided no legal basis for that order, United has not offered any basis on appeal and we cannot think of one.

We review a trial court's formulation of an equitable remedy only for abuse of discretion, Sears Mortg. Corp. v. Rose, 134 N.J. 326, 354 (1993), recognizing that trial judges have broad discretionary power to fashion equitable remedies appropriate to the particular circumstances at hand. Kaye v. Rosefielde, 223 N.J. 218, 231 (2015). Although the General Equity judge may have believed she was only imposing an obligation on the City to refrain from acting, as was the case in prohibiting the City from proceeding with the 2018 procurement pending final hearing, it is obvious by the further order to "maintain the status quo regarding the retention of [United] as the janitorial and maintenance service contractor for Newark under the present terms of service and payment" that the court had been induced to enter a mandatory injunction "constitute[ing] a direct entry by the [c]ourt into a significant discretionary decision in the municipal fiscal area" without any substantive legal basis. Barney's Furniture Warehouse of Newark, Inc. v. City of Newark,

62 N.J. 456, 470 (1973). See also Rogers Locomotive & Mach. Works v. Erie Ry. Co., 20 N.J. Eq. 379, 382 (Ch. 1869) ("It is beyond the office of an injunction to compel the continuous performance of a duty. Injunctions are granted to restrain, but not to compel an act to be done.").

The judge's comments on the motion to enter judgment that she "thought . . . that the preliminary injunction would apply to those contracts that [United] had at the time that . . . were the subject of the R.F.P" and her refusal to include the $94,000 claimed due for Williams Street in the judgment lead us to believe she was not aware she had issued a mandatory injunction compelling the City to continue United as its janitorial services provider for all forty of the City's buildings at emergency pricing levels, which United's vice president certified amounted to a monthly cost of $450,000 for an annual bill of $5.4 million.

Regardless of what the judge believed to be the scope of the mandatory injunction to Newark to retain United as the City's "janitorial and maintenance service contractor . . . under the present terms of service and payment," it was obviously improvidently granted. See Bailey v. Schnitzius, 45 N.J. Eq. 178, 184 (E. & A. 1889) (holding "as this form of injunction to accomplish its purpose must command or coerce the defendants to do certain affirmative acts,

not merely to remain inactive or refrain, it is rarely granted before final hearing" and "only in case of extreme necessity").  Newark, however, did not seek leave to appeal the injunction and admittedly received the services, albeit at emergency pricing, until the date the City locked United out of its buildings in March 2020.

But we agree with the City that there was no basis for the General Equity judge to order Newark to pay $4,338,498.90 for services it didn't receive, in addition to the nearly $8.5 million the City claims it had already paid United pursuant an improvidently granted preliminary injunction "as a matter of equity."[7]  As we noted on United's last appeal in response to its claim for damages, the law is well settled "that an aggrieved bidder is not entitled to damages."  United Servs. II (slip op at 3) (quoting Suburban Disposal, 383 N.J. Super. at 495).  See also M.A. Stephen Constr. Co., 125 N.J. Super. at 75-76 (reasoning that allowing an aggrieved bidder to recover damages after the contract work has been performed by another "would simply twice penalize the public").

---

[7]  The City agreed to entry of a $198,410.93 judgment in favor of United for invoices dating back to March 2019.  It is not part of this appeal.

The General Equity judge failed to acknowledge the ancient maxim that "equity follows the law." See Shinn, 394 N.J. Super. at 67. Although the maxim will "not bar the crafting of a remedy not recognized by legislation or found in the common law, . . . it does prevent the issuance of a remedy that is inconsistent with recognized statutory or common law principles." Ibid. Equity may "soften[ ] the rigor of the law," Giberson v. First Nat'l Bank of Spring Lake, 100 N.J. Eq. 502, 507 (Ch. 1927), but "will not create a remedy that is in violation" of it. Shinn, 394 N.J. Super. at 67. Ordering Newark to make payment to United after it took the services United had been providing in-house, as the trial judge recognized the City had every right to do, because "Newark understood at the time that it chose to bring the janitorial services in-house that it still had obligations" under an injunction entered without any legal basis is not equity, it is unlawful and will not stand.

Finally, we reject United's argument that the City agreed to pay what it has maintained since the time it was entered was an injunction entered without legal basis and should be estopped from challenging it on appeal. Having read the transcripts of each of the hearings, we are wholly convinced the City was simply expressing its understanding that it was obligated to comply with the trial court's orders and would pursue its remedies on appeal. Both United and

41

the General Equity judge appear to have understood Newark's counsel's arguments as an agreement to settle the litigation by continuing to pay United at emergency rates through what would have been the end of the 2018 contract period. This was not a settlement, it was a party doing what parties subject to court orders they believe were entered erroneously, as this one was, must do — comply with the trial court's rulings and challenge them on appeal.

United's remaining arguments, to the extent we have not addressed them, are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

The judgment in favor of United is reversed in its entirety and the matter remanded for its cancellation of record and such further proceedings as may be necessary consistent with this opinion. We do not retain jurisdiction.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2007-20